# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ROBERT GATZKE, et al.,**
      Plaintiffs,

    v.                                        Case No. 21-C-0243

**CITY OF WEST BEND, WISCONSIN,**
**et al.,**
      Defendants.

---

## DECISION AND ORDER

The plaintiffs in this action propose to represent a class of residents and property owners in the Villa Park neighborhood of the City of West Bend, Wisconsin. They allege that a landfill owned by the City is leaking toxic chemicals that are contaminating their properties. Most of the plaintiffs' claims seek damages for property damage and injunctive relief to prevent further harm to the properties. These claims are largely based on state-law legal theories such as negligence and creation of a nuisance. However, in their original complaint, the plaintiffs also alleged a claim under the Emergency Planning and Community Right-to-Know Act of 1986 ("EPCRA"), 42 U.S.C. §§ 11001–50, a federal law that, as is relevant here, requires entities that use, store, or release hazardous chemicals to make certain public disclosures. In their EPCRA claim, the plaintiffs allege that West Bend has failed to make various disclosures required by the Act. The plaintiffs allege that, because they asserted an EPCRA claim, which gives rise to federal-question jurisdiction, *see* 28 U.S.C. § 1331, the court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

Shortly after the plaintiffs commenced this action, West Bend filed a motion for summary judgment on the EPCRA claim. The motion asserts that the claim must be dismissed because the plaintiffs did not provide proper pre-suit notice, as required by 42 U.S.C. § 11046(d)(1). The motion also asserts that, if the EPCRA claim is dismissed, the court should relinquish supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. §1367(c)(3). In addition to opposing the motion for summary judgment, the plaintiffs filed an amended complaint that purports to assert claims against the City and two of its officials under 42 U.S.C. § 1983. The plaintiffs contend that, in light of these new federal claims, even if the EPCRA claim is dismissed, the court would continue to have federal-question jurisdiction and should exercise supplemental jurisdiction over the state-law claims.

I address the motion for summary judgment, and its effect on federal jurisdiction, in this order.

## I. BACKGROUND

The City of West Bend is the owner and former operator of the Schuster Drive Landfill. The landfill was used between 1964 and 1984 as a municipal solid waste disposal facility. The landfill does not have a liner, and the City admits that the landfill "has released substances which qualify as hazardous substances under Wisconsin law." West Bend Answer to Am. Compl. ¶ 23. Releases from the landfill have contaminated the groundwater in the Villa Park neighborhood, where the plaintiffs reside and/or own property. *Id.* ¶ 25. When the City discovered the contamination in 1986, it closed the local drinking wells and ran municipal water to the area. *Id.* The City asserts that it has been working with the Wisconsin Department of Natural Resources to address the releases

2

from the landfill and that its ongoing efforts to investigate and remediate groundwater impacts are matters of public record. *Id.* ¶¶ 23–24, 29.

The plaintiffs allege that their property has been contaminated by hazardous substances leaking from the Schuster Landfill. They allege that these substances include "carcinogenic chlorinated solvents and 1,4-dioxane." Am. Compl. ¶ 20. They allege that, for over 30 years, the City has "failed to properly control the contamination, properly remediate the contamination, and . . . notify the public about the presence and threat of the contamination." *Id.* ¶ 30. The plaintiffs claim that the "bungled investigation, containment, and remediation failed to protect the public, and instead facilitated the development of the Villa Park neighborhood[,] placing families including pregnant mothers, young infants, and children living among the contamination for 30-plus years with no knowledge of the contamination of the property or health threats associated with this contamination." *Id.* ¶ 31. The plaintiffs "seek redress and damages for economic losses, such as loss of property value and the interference with the use and enjoyment of their property; the prompt identification, delineation, cleanup, excavation, treatment, and identification [sic] and removal of Landfill contaminants from their properties; and punitive damages and other damages as the result of the carelessness, recklessness, negligence, and willful and wanton violation of law by the Defendants." *Id.* ¶ 43.

Although the primary focus of the plaintiffs' complaint is on the alleged harm caused to their properties, the plaintiffs also bring a claim under the Emergency Planning

3

and Community Right-to-Know Act of 1986.[1] Under this Act, certain businesses must submit information about a broad spectrum of potentially hazardous chemicals used in their facilities to state and local authorities and to the public upon request. *See* Christopher L. Bell, et al., *Environmental Law Handbook* 801 (20th ed. 2009). The primary goals of EPCRA are to provide the public access to information concerning hazardous chemicals present in the community and to use this information to adopt local emergency response plans in the event of a hazardous chemical release. *Id.* To achieve these goals, EPCRA creates four basic programs. First, it contains provisions that aid in emergency response planning. *See* 42 U.S.C. § 11001–03. Second, it contains provisions requiring facilities to provide emergency notification of accidental releases of hazardous chemicals. *Id.* § 11004. Third, it creates inventory reporting requirements that apply to facilities that store hazardous chemicals. *Id.* §§ 11021, 11022. Finally, it requires facilities that manufacture, process, or use hazardous chemicals to report the quantities of such chemicals they release annually into the environment. *Id.* § 11023.

EPCRA has several enforcement mechanisms. The Environmental Protection Agency may seek criminal, civil, or administrative penalties for violations. 42 U.S.C. § 11045. State and local governments can also seek civil penalties, as well as injunctive relief. *Id.* §§ 11046(a)(2) and (c). But there is also a citizen-suit provision, under which "any person" can commence a civil suit against an owner or operator of a facility for failure to comply with EPCRA's notice and reporting requirements. *Id.* § 11046(a)(1)(A). If a

---

[1] The plaintiffs also bring a claim under a Wisconsin statute that duplicates some of EPCRA's requirements. *See* Wis. Stat. § 323.60.

citizen suit is successful, the district court may "enforce the requirement concerned" and "impose any civil penalty provided for violation of that requirement." *Id.* § 11046(c). However, any civil penalty is paid to the U.S. Treasury rather than to the plaintiff who filed the suit. *Id.* § 11045; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998). Further, before a citizen may commence an action under § 11046(a)(1)(A), he or she must give 60 days' notice of the alleged violation to the EPA, to the state in which the alleged violation occurred, and to the alleged violator. 42 U.S.C. § 11046(d)(1).

In the present case, the plaintiffs allege that West Bend violated EPCRA by failing to make three kinds of required disclosures in connection with the Schuster Landfill: (1) immediate notices of accidental releases of a hazardous substances, as required by 42 U.S.C. § 11004; (2) the filing of inventory forms and "material safety data sheets" relating to hazardous chemicals, as required by §§ 11021 and 11022; and (3) the filing of annual "toxic chemical release forms" for each toxic chemical "that was manufactured, processed, or otherwise used in quantities exceeding [certain threshold quantities]," as required by § 11023. In their complaint, the plaintiffs request an injunction requiring West Bend to make the required disclosures. Am. Compl. at 30 ¶ D.

After answering the complaint, West Bend filed a motion for summary judgment on the EPCRA claim, alleging that the plaintiffs failed to provide proper pre-suit notice of the alleged violations. West Bend submits a letter to it dated November 16, 2020 by plaintiffs' counsel on behalf of the named plaintiffs and others in the Villa Park neighborhood. ECF No. 13-1. The letter purports to notify West Bend of the alleged EPCRA violations described above. However, West Bend contends that the letter is conclusory, in that it does not contain enough information about the alleged EPCRA violations to enable the

5

City to identify what the plaintiffs believe it did wrong and what corrective action it could take to avoid a lawsuit. Therefore, West Bend argues, the notice was defective, and the EPCRA claim must be dismissed.

West Bend filed its motion for summary judgment while the plaintiffs' original complaint was still the operative complaint. Because the EPCRA claim was the only federal claim alleged in that complaint, West Bend argued that, once the EPCRA claim was dismissed, the court should relinquish supplemental jurisdiction over the plaintiffs' state-law claims under 28 U.S.C. § 1367(c)(3), which provides that a court may decline to exercise jurisdiction over supplemental claims once all claims conferring original jurisdiction have been dismissed. However, after West Bend filed its motion for summary judgment, the plaintiffs filed an amended complaint that, among other things, adds four new federal claims. These claims are all alleged to arise under 42 U.S.C. § 1983. Three claims are alleged against two of West Bend's officials, Jay Shambeau and Doug Neumann, in their personal capacities, and the fourth claim is a *Monell* claim[2] against West Bend. All four claims allege that, by failing to mitigate and properly disclose the dangers created by the Schuster Landfill, the defendants violated the plaintiffs' constitutional rights. One claim alleges that the defendants' failures violated the plaintiffs due-process rights to "bodily integrity," Am. Comp. ¶¶ 145–52, a second alleges that the failures resulted in unlawful seizures in violation of the Fourth Amendment, *id.* ¶¶ 153–58, and a third alleges that the defendants' failures resulted in a "state created danger," *id.* ¶¶ 159–66. The plaintiffs contend that the addition of these § 1983 claims creates a

---

[2] *See Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

firmer basis for the court to exercise supplemental jurisdiction over the state-law claims that seek compensation for property damage and other harms.

## II. DISCUSSION

### A. Summary Judgment on EPCRA Claim

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

EPCRA requires 60 days' written notice to the alleged violator, the EPA, and the state in which the violation occurred. The relevant statute states:

> No action may be commenced under subsection (a)(1)(A) prior to 60 days after the plaintiff has given notice of the alleged violation to the Administrator, the State in which the alleged violation occurs, and the alleged violator. Notice under this paragraph shall be given in such manner as the Administrator shall prescribe by regulation.

42 U.S.C. § 11046(d)(1). The EPA has promulgated a regulation prescribing the manner of giving notice. It provides in relevant part as follows:

> Notice regarding an alleged violation of a . . . requirement . . . shall include sufficient information to allow the recipient to identify the specific . . . requirement . . . which has allegedly been violated; the activity or failure to act alleged to constitute a violation; the name and address of the site and facility alleged to be in violation, if known; the person or persons responsible for the alleged violation; the date or dates of the violation; and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 374.3(a).

"[T]he purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a

7

Case 2:21-cv-00243-LA   Filed 09/21/21   Page 7 of 17   Document 31

citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, Inc., 484 U.S. 49, 60 (1987) (interpreting similar notice provision of Clean Water Act). "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997).

In the present case, the plaintiffs, through counsel, sent a letter to West Bend on November 16, 2020, more than 60 days before they filed this suit on February 23, 2021. *See* ECF No. 13-1. The letter states that "[t]he Shuster Landfill is a facility covered under the Emergency Planning and Community Right to Know Act." *Id.* It continues:

> Upon information and belief, the Shuster Landfill has "released" hazardous substances and extremely hazardous substances, including . . . substances such as 1,4 dioxane, PCE and TCE in excess of their individual reportable threshold quantities for each which requires these reports upon the release of 100 pounds of the substances, or in excess of one pound for releases of vinyl chloride.
>
> . . . .
>
> The City of West Bend ("City") failed to comply with the notice requirements of 42 USC § 11004. City specifically, but not exhaustively, failed to "immediately" provide the notice required by 42 USC 11004(b)(2) of the release to the community emergency coordinator for the local planning committee.
>
> City also failed to comply with the notice requirements of 42 USC §§ 11021, 11022. City further failed to comply with the reporting requirements of 42 USC § 11023. Noticing individuals below further believe City further failed to timely submit a material safety data sheet to the local emergency planning committee, the State emergency response commission or the local fire department. Further, the noticing individuals below believe City failed to submit a toxic chemical release form and submit it to the Administrator of the Environmental Protection Agency or the requisite State officials as required by 42 USC § 11023. As a result of City's failures, the noticing individuals have not received the notice they are statutorily required to receive.

*Id.*

Notably, although the plaintiffs' letter accuses West Bend of failing to make various disclosures required by EPCRA, it does not allege *when* the plaintiffs think West Bend should have made the disclosures. And this is a fatal omission. EPCRA does not create an abstract reporting requirement that applies to every facility that uses or emits hazardous chemicals. Instead, it requires certain facilities to make certain disclosures at specified times upon the occurrence of specified triggering events. *See* Bell, *supra*, at 802 (table listing reporting schedules for various EPCRA requirements). A violation occurs only when a covered entity fails to make a required report or disclosure within the specified time after the happening of a triggering event. Thus, to adequately give a person notice of an alleged violation, a plaintiff must identify when he or she thinks the triggering event occurred and the date by which he or she thinks the person should have (but did not) file the associated report or disclosure.[3] Without this information, the alleged violator is unable to determine what the plaintiff thinks it is doing wrong and what corrective action it could take to avert a lawsuit. *See Atl. States Legal Found.*, 116 F.3d at 819.

To explain this in more detail, I address each of the four alleged reporting violations purportedly noticed in the plaintiffs' letter and show that each has a specific triggering event and reporting schedule. First, the plaintiffs allege that West Bend failed to provide immediate notice of an accidental release of certain hazardous chemicals. Under EPCRA, the triggering event for such a notice is a release of certain defined hazardous and extremely hazardous substances in the amount of the substance's "reportable quantity" (which is precisely defined in the regulations) within any 24-hour period. *See* 42 U.S.C.

---

[3] Or, as the EPA regulation puts it, the notice must identify "the date or dates of the violation." 40 C.F.R. § 374.3(a).

9

§ 11004; 40 C.F.R. § 355.33. Thus, to give adequate notice of an alleged violation of the emergency-notification provision, plaintiffs would, at a minimum, have to identify the approximate date or dates (i.e., the 24-hour period or periods) on which they believe a release of a reportable quantity of a substance occurred. Only then could West Bend have determined when, according to the plaintiffs, "immediate" notification of a release was required but not made.

The plaintiffs' second and third alleged violations involve EPCRA's inventory disclosures. *See* 42 U.S.C. §§ 11021 and 11022. The first alleged inventory violation is failure to submit a material safety data sheet, as required by § 11021. EPCRA requires facilities who are required by the Occupational Safety and Health Act of 1970 and its regulations to prepare or have available such a data sheet for a hazardous chemical to submit the data sheet to local agencies, including the fire department, if the facility keeps such chemicals in amounts that equal or exceed the applicable threshold levels (which are defined by regulation). *See* 42 U.S.C. § 11021(a)(1); 40 C.F.R. § 370.30(a). The requirement to submit the data sheet to local agencies is a one-time-only requirement triggered by when the facility first acquires a threshold amount of a hazardous chemical, although revised data sheets may need to be submitted upon the discovery of new information about the chemical. *See* 40 C.F.R. §§ 370.10(a), 370.33. Generally, the facility must submit the data sheet within three months of acquiring a threshold amount of a hazardous chemical. *See id.* § 370.33 Thus, for the plaintiffs to have provided adequate notice of an alleged violation of these requirements, their notice must have, at a minimum, identified the date or dates by which they believe West Bend began storing hazardous chemicals at the landfill at or above their threshold amounts and alleged that

10

West Bend did not submit data sheets to the appropriate local agencies within three months of such date or dates.

The plaintiffs' other alleged inventory violation is failure to submit hazardous chemical inventory forms to local authorities, as required by § 11022. Generally, the requirement to submit such forms applies to a facility that is required to submit material safety data sheets under § 11021. *See* Bell, *supra*, at 820. As with the data sheets, the requirement to submit inventory forms is triggered by the presence of hazardous chemicals at the facility in amounts greater than or equal to the specified threshold levels. 40 C.F.R. § 370.40(a). A facility that stores such chemicals must submit inventory forms to the appropriate authorities by March 1 if the threshold levels were met at any time during the previous calendar year. *Id.* Thus, for the plaintiffs to have provided adequate notice of an alleged violation of these requirements, their notice must have, at a minimum, identified the calendar year or years in which they believe West Bend stored at least the threshold quantity of a hazardous chemical at the Schuster Landfill and alleged that West Bend did not submit inventory forms to the appropriate authorities by March 1 of the following year or years.

The plaintiffs' final alleged EPCRA violation involves the toxic chemical release reporting requirements of § 11023. Under this section, owners and operators of certain facilities must submit a report summarizing "releases" of certain toxic chemicals into the environment to the EPA and to certain state officials. 42 U.S.C. § 11023(a). For the reporting requirement to apply, the facility must have manufactured, processed, or otherwise used the chemical in quantities exceeding the toxic chemical threshold quantity specified in the statute during a calendar year. *Id.* § 1023(a), (f). If the threshold was

exceeded during a calendar year, the facility must submit a release report to the specified authorities by July 1 of the following year. *Id.* § 1023(a); 40 C.F.R. § 372.30(d). Thus, for the plaintiffs to have provided adequate notice of an alleged violation of these requirements, their notice must have, at a minimum, identified the calendar year or years in which they believe West Bend manufactured, processed, or otherwise used a toxic chemical in an amount greater than its defined threshold level and alleged that West Bend did not submit toxic inventory release forms to the appropriate authorities by July 1 of the following year or years.

As discussed, the plaintiffs' letter to West Bend did not specify any dates on which the plaintiffs believe events occurred at the Schuster Landfill that triggered reporting requirements under EPCRA. The only information specific to the landfill that the plaintiffs described in their letter was their belief that the landfill "has 'released' hazardous substances and extremely hazardous substances, including . . . 1,4 dioxane, PCE and TCE[,] in excess of their individual reportable threshold quantities." ECF No. 13-1 at 1. The letter stated that, for these substances, the reportable threshold quantities were "100 pounds of the substances, or in excess of one pound for releases of vinyl chloride." *Id.* The letter did not state when these releases allegedly occurred. Moreover, the letter's references to reportable threshold quantities are meaningless in the abstract; they must be tied to specific time periods. The plaintiffs' letter did not specify any time periods in which the thresholds were met or exceeded, and therefore it did not provide West Bend with enough information to determine what the plaintiffs believed it was doing wrong so that it could know what corrective action would avert a lawsuit. *See Atl. States Legal Found.*, 116 F.3d at 819.

12

The plaintiffs contend that they were not required to specify when the alleged EPCRA violations occurred because they have alleged that the landfill "has been continuously releasing hazardous materials . . . on an ongoing basis since the landfill's operation." Br. in Opp. at 6. But, as I have taken pains to explain, EPCRA does not require disclosures whenever a facility has released hazardous materials, even if the facility has been continuously releasing hazardous materials. A release of a substance triggers an EPCRA disclosure requirement only if the release involved a reportable quantity within a 24-hour period, which would trigger the emergency-notification requirement of § 11004. The Schuster Landfill could have been continuously releasing hazardous substances throughout its existence without ever releasing a reportable quantity of any substance during a single 24-hour period. Thus, the plaintiffs' supposed notice of a "continuous release" does not qualify as proper notice of an alleged EPCRA violation. The remaining EPCRA requirements cited by the plaintiffs are not even triggered by releases of hazardous substances: the inventory disclosures required by §§ 11021 and 11022 apply only when a covered facility keeps a defined quantity of hazardous chemicals in its facility, and the toxic chemical release forms required by § 11023 must be filed only when the facility manufactures, processes, or uses more than a threshold quantity of a specified hazardous chemical within a single calendar year. The plaintiffs' supposed notification of a continuous release of hazardous chemicals certainly did not provide West Bend with information sufficient to allow it to determine the years in which, according to the plaintiffs, it kept a threshold quantity of a hazardous chemical at the landfill or manufactured, processed, or used more than a threshold quantity of such a chemical at the landfill.

13

Ultimately, the plaintiffs' letter did not notify West Bend of any EPCRA violation or violations. Instead, it informed West Bend that the plaintiffs suspected that, at some unknown time or times within the last 35 years, West Bend failed to make a disclosure required by EPCRA. The plaintiffs then left it to West Bend to figure out when the alleged violation or violations might have occurred. Such a letter does not satisfy the notice requirement of 42 U.S.C. § 11046(d)(1). A satisfactory notice must contain information sufficient to enable the recipient to identify "the date or the dates of the violation," 40 C.F.R. § 374.3(a), must "inform the alleged violator about what it is doing wrong," *Atl. States Legal Found.*, 116 F.3d at 819, and must enable the recipient to "know what corrective actions will avert a lawsuit," *id.* A letter that essentially asks a recipient to review 35 years of its own records to determine whether it can identify any EPCRA violations that occurred during that time does not satisfy these requirements.

Accordingly, West Bend has shown that the plaintiffs failed to comply with EPCRA's 60-day notice requirement. In a case involving the notification provision of the Resource Conservation and Recovery Act of 1976 ("RCRA"), the Supreme Court held that giving notice is a "mandatory precondition to suit" and that the district court has no choice but to dismiss an action if proper pre-suit notice was not given. *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989). The Court held that a district court may not stay an action once suit has been filed while the plaintiff provides proper notice. *Id.* at 26. In *Hallstrom*, the Court noted that, since 1970, a number of other federal statutes have incorporated notice provisions patterned after RCRA's. *Id.* at 23. The Court specifically cited EPCRA as one of the federal statutes containing a notice provision that was

14

patterned on RCRA's. *Id.* at 23 n.1. Based on this authority, and because EPCRA's notice provision is materially identical to RCRA's, I must dismiss the plaintiffs' EPCRA claim.

**B.      Effect of Dismissal of EPCRA Claim on Subject-Matter Jurisdiction**

When the plaintiffs' filed their original complaint, the EPRCA claim was the only federal claim alleged, and such claim provided the sole basis for federal subject-matter jurisdiction. But the plaintiffs have since amended their complaint to assert federal claims under 42 U.S.C. § 1983. In these claims, the plaintiffs allege that West Bend and two of its officers violated the plaintiffs' rights to substantive due process and committed unlawful seizures by failing to prevent hazardous substances from contaminating their properties and by failing to warn the plaintiffs about the migration of those substances and the risks associated with exposure to them. The plaintiffs contend that, even if the EPCRA claim is dismissed, these § 1983 claims would be sufficient to provide a basis for supplemental jurisdiction over the state-law claims for negligence, nuisance, strict liability, and trespass.

Under 28 U.S.C. § 1367(a), a district court generally has supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." Courts generally treat claims that "share a common nucleus of operative facts" as satisfying the "same case or controversy requirement." *See Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258 (7th Cir. 2018). Even if claims share such a common nucleus, however, the district court may decline to exercise supplemental jurisdiction over a claim for various reasons. *Id.* § 1367(c). Two of those reasons are relevant here: (1) the state-law claims "substantially predominate" over the claims over

15

which the court has original jurisdiction, *id.* § 1367(c)(2); and (2) the district court has dismissed all claims over which it has original jurisdiction, *id.* § 1367(c)(3).

If the EPCRA claim were the only federal claim involved in this suit, then, because I have dismissed the EPCRA claim, I would have relinquished supplemental jurisdiction over the state-law claims. Further, while it is possible that the plaintiffs could cure their failure to give proper notice and reassert their EPCRA claim, I would not use this possibility as a reason to retain supplemental jurisdiction over the state-law claims. That is so because, even if the EPCRA claim could be reasserted, the state-law claims would "substantially predominate" over the EPCRA claim. *See* 28 U.S.C. § 1367(c)(2). The state-law claims involve toxic torts that will likely entail complicated factual inquiries and a wide range of potential relief. In contrast, the EPCRA claim involves relatively simply inquiries into whether the defendants filed the proper paperwork after acquiring or releasing certain chemicals.

However, the addition of the § 1983 claims changes matters. Those federal claims share a common nucleus of operative facts with the state-law claims and thus provide an independent basis for exercising supplemental jurisdiction over the latter claims. If the § 1983 claims were "wholly insubstantial and frivolous" and alleged solely to provide a basis for federal jurisdiction, then they would not engage the court's federal-question jurisdiction and could not provide a basis for exercising supplemental jurisdiction. *See, e.g., Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 586–87 (7th Cir. 2017). I have my doubts about whether the § 1983 claims state claims on which relief could be granted, but the defendants have not yet moved to dismiss those claims, and at

this point, I cannot say on my own that they are wholly insubstantial and frivolous. Accordingly, I will continue to exercise supplemental jurisdiction over the state-law claims.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that West Bend's motion for summary judgment is **GRANTED** to the extent that the plaintiffs' EPCRA claim is dismissed without prejudice for failure to give pre-suit notice.

Dated at Milwaukee, Wisconsin, this 21st day of September, 2021.

                                                            s/Lynn Adelman_____
                                                            LYNN ADELMAN
                                                            United States District Judge