IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROBERT GATZKE, THERESA DEUEL, BRYAN SCHOFIELD, and GEOFFREY RICKABY On Behalf of Themselves and all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF WEST BEND, WISCONSIN, JAY SHAMBEAU, DOUG NEUMANN, MANITOU AMERICA HOLDING, INC. d/b/a and f/k/a Manitou Americas, Inc., Gehl Company, Gehl Brothers Manufacturing Company and Berres – Gehl Manufacturing Company; and GREENFIELD WORLDTRADE, INC. d/b/a The Legacy Companies d/b/a and f/k/a The West Bend Company <br><br> Defendants. | Civil Action No. 21-CV-0243-LA |

## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned attorneys, Urban and Taylor, S.C. and Nidel & Nace, PLLC bring this civil action on his/their own behalf and on behalf of the classes they represent to obtain damages, both compensatory and punitive, injunctive relief, and costs of suit from the named Defendant, and complain and allege, as follows:

## INTRODUCTION

1.      This is a civil action to secure redress from City of West Bend; Jay Shambeau; Doug Neumann; Manitou America Holding, Inc. d/b/a and f/k/a Manitou Americas, Inc., Gehl Company, Gehl Brothers Manufacturing Company and Berres – Gehl Manufacturing Company; and (collectively "Defendants") for damages suffered by members of the putative classes defined below (the "Class Members") as a result of the contamination of their property by ongoing leachate from the Schuster

1

Drive Landfill ("the Landfill") and the mishandling of toxic and hazardous wastes disposed of and contained in the Landfill and the mishandling of the cleanup of wastes contained within that landfill and now contained in, under, and on Plaintiffs' and Class Members' properties. These wastes have been leaking from the Landfill for decades, a fact that was known to Defendants, and yet this information has been concealed from Plaintiffs and Class Members.

2.      Plaintiffs and Class Members have been exposed to hazardous substances, including, but not limited to, chlorinated solvents, including trichloroethylene ("TCE"), perchloroethylene ("PCE"), dichloroethylene, dichloroethane, vinyl chloride, and 1,4 dioxane, released as a result of Defendants' conduct in handling wastes disposed of in the Landfill.

3.      Prior to the Fall of 2019, Defendants concealed the presence of these chemicals leaking from the Landfill and onto, into, and around Plaintiffs' and Class Members' properties, despite their knowledge of the active leaking, contamination, and trespass and the associated health risks with these toxic and carcinogenic chemicals.

4.      Despite Defendants' concealment, the presence of toxic chemicals and hazardous substances on, in, and around Plaintiffs' and Class Members' properties presents a significant health risk to those living in, on, and around these properties as well as a significant environmental liability to those owning these properties.

## PARTIES

### Plaintiff(s)

5.      Plaintiff Robert Gatzke is a resident of the Villa Park neighborhood, in West Bend, Wisconsin. Plaintiff Robert Gatzke owns the property located within the Class Area at 819 Villa Park Drive. Plaintiff Robert Gatzke is a putative class representative for the Villa Park Property Damage Class.

2

6. Plaintiff Theresa Deuel is a resident of the Villa Park neighborhood, in West Bend, Wisconsin. Plaintiff Theresa Deuel owns the property located within the Class Area at 1213 Villa Park Drive. Plaintiff Theresa Deuel is a putative class representative for the Villa Park Property Damage Class.

7. Plaintiff Bryan Schofield is a resident of the Villa Park neighborhood, in West Bend, Wisconsin. Plaintiff Bryan Schofield owns the property located within the Class Area at 1040 Shepherds Drive. Plaintiff Bryan Schofield is a putative class representative for the Villa Park Property Damage Class.

8. Plaintiff Geoffrey Rickaby is a resident of the Villa Park neighborhood, in West Bend, Wisconsin. Plaintiff Geoffrey Rickaby owns the property located within the Class Area at 3312 Mediterranean Avenue. Plaintiff Geoffry Rickaby is a putative class representative for the Villa Park Property Damage Class.

9. As a result of Defendants' actions, specifically its inadequate containment, handling, and remedial activities, toxic and hazardous chemical substances ("Landfill contaminants"), including chlorinated solvents (including TCE, PCE, DCE, DCA, and vinyl chloride) and 1,4-dioxane have entered onto Plaintiffs' and Class Members' properties and have contaminated their property, air, land, groundwater, dwelling and surrounding environment, thereby causing Plaintiffs and the Class Members to suffer damage to property and personal finance, loss of the use and enjoyment of property and destruction of their community.

10. As a result of the actions of Defendants' toxic and carcinogenic chemical wastes have entered onto Plaintiffs' and the Class Members' neighbors' properties depriving Plaintiffs and the Class Members of their free use and enjoyment of their properties.

3

## Defendants

11.     The City of West Bend ("West Bend" or the "City") is an incorporated City under the laws of Wisconsin.

12.     The City of West Bend has been the owner and/or operator of the Schuster Landfill for multiple decades and has been responsible for the Landfill since at least the mid-1980s. Investigation and lack of remediation decisions were made by it through its final policy members, including Jay Shambeau and Doug Neumann.

13.     Defendant Jay Shambeau is the City Administrator for the City of West Bend, Wisconsin.  He has over twenty-seven years of experience in local government and has been the City Administrator since 2016.  He has worked directly on the Shuster Landfill in his role and has had knowledge of the migration of VOC's from the Landfill to Plaintiffs' properties since at least 2016. He has worked under color of state title in his role as City Administrator and has failed to take action to remediate the contamination in the Plaintiffs' and proposed class members' properties.  Further, for years he failed to notify Plaintiffs' and the proposed class members about the migration of contaminants from the Landfill to their homes.

14.     Defendant Doug Neumann is the Public Works Director for the City of West Bend. He has had knowledge of the migration of contaminants from the Shuster Landfill into Plaintiffs' and proposed class members' properties since at least 2017 at which time he was the Public Works Director.  He has worked directly with the Shuster Landfill and has been receiving groundwater and vapor intrusion testing data from consultant AECOM regarding the contamination and migration of contaminants into the proposed class area.

15.     Defendants City of West Bend, Jay Shambeau and Doug Neumann may be collectively referred to as "The Government Defendants."

4

16.     Defendant Manitou America Holding, Inc. d/b/a and f/k/a Manitou Americas, Inc., Gehl Company, Gehl Brothers Manufacturing Company and Berres – Gehl Manufacturing Company (hereinafter "Gehl") is a domestic corporation with its principal place of business in the State of Wisconsin.  Beginning in the 1960's, Gehl disposed of volatile organic compounds at the Shuster Landfill by pouring liquid waste into a four-foot diameter steel pipe which was installed by the City of West Bend.  When the culvert no longer seeped to the bottom and with the knowledge and consent of City, Gehl would dispose of this liquid waste directly into excavated holes on the landfill mixed with solid refuse and then concealed the liquid with covering dirt.  These liquids migrated offsite onto Plaintiffs' and the class members' properties.

17.     Defendant Greenfield Worldtrade Inc. d/b/a The Legacy Companies d/b/a and f/k/a The West Bend Company (hereinafter "Greenfield") is a foreign corporation with its principal place of business in the State of Florida.  Beginning in the 1960's, and acting as predecessor corporation "The West Bend Company," Greenfield likewise disposed of volatile organic compounds at the Shuster Landfill by pouring liquid waste into a four-foot diameter steel pipe which was installed by the City of West Bend.  When the culvert no longer seeped to the bottom and with the knowledge and consent of City, Gehl would dispose of this liquid waste directly into excavated holes on the landfill mixed with solid refuse and then concealed the liquid with covering dirt.  These liquids migrated offsite onto Plaintiffs' and the class members' properties.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over each Defendant as each is located in the State of Wisconsin and the actions giving rise to the injuries claimed took place within the State of Wisconsin, specifically in Washington County.

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

5

20.     Venue is appropriate in the United States District Court for the Eastern District of Wisconsin pursuant to 42 U.S.C. § 11046(b)(1).

## FACTUAL ALLEGATIONS

21.     Plaintiffs and the Class Members have incurred damages as a result of the contamination of their property by the ongoing and continuing leaching of hazardous and carcinogenic wastes into, under, and onto their properties from the Landfill.

22.     These hazardous waste materials have been and continue to be released into, under, and onto the Plaintiffs' and Class Members' properties. Plaintiffs', the Class Members' and the Class Area properties have been and continue to be contaminated with these hazardous substances, including carcinogenic chlorinated solvents and 1,4-dioxane.

23.     The Landfill is an unlined landfill that is not, and never was, properly equipped for the disposal of hazardous substances, including chlorinated solvents.

24.     The Landfill was in operation roughly from 1964 through 1984. During this time period, despite the lack of appropriate controls and lining, hazardous wastes, including local industrial chemicals, including but not limited to chlorinated solvents, TCE and 1,4-dioxane were disposed of in significant quantities so as to represent an imminent and substantial threat to public health and the Plaintiffs' and Class Members' properties in the Villa Park neighborhood.

25.     Despite the closure of the Landfill in 1984, the Landfill continues to leak hazardous and carcinogenic chemicals into, under, and onto the surrounding property, including the Villa Park neighborhood.

26.     The City knew, at least as early as 1986 that the Landfill was leaking these hazardous and carcinogenic chemicals into, under, and onto properties in or near what is now known as the Villa Park neighborhood.

6

27.     The City was aware of groundwater contamination of the area now known as the Villa Park neighborhood as early as 1986 when they tested local drinking wells and ultimately ran city water to the area.

28.     Upon information and belief, City had knowledge of and actually aided and supported the disposal of liquid hazardous substances onto the Landfill, including such substances that were being disposed of by Gehl and Greenfield, since as early as 1964.

29.     Upon information and belief, Defendants Gehl and Greenfield did, in fact, dispose of liquid hazardous substances, including substances containing VOCs onto the Landfill and including into a four-feet diameter pipe that was dug and backfilled with the knowledge, consent and assistance of City.

30.     Defendant Shambeau has been aware of groundwater contamination of the area now known as the Villa Park neighborhood at least as early as 2016 when he became City Administrator.

31.     Defendant Neumann has been aware of groundwater contamination of the area now known as the Villa Park neighborhood at least as early as 2017 during his tenure as Director of Public Works.

32.     Despite closing wells due to the ongoing contamination and providing city water to the area, the City did nothing to identify the presence of hazardous and carcinogenic chemicals in, on, and under the property known comprising the Villa Park neighborhood.

33.     Defendants did nothing to notify the public, including those living or purchasing homes in the Villa Park neighborhood that their properties were contaminated and that there was a serious risk of exposure to those contaminants through groundwater, surface water, sump pumps and indoor and outdoor vapors along with associated health threats.

7

34.     For over 30-years, Defendant City and its decision-making employees, including Shambeau and Neumann, failed to properly control the contamination, properly remediate the contamination, and to notify the public about the presence and threat of the contamination.

35.     This bungled investigation, containment, and remediation, failed to protect the public, and instead facilitated the development of the Villa Park neighborhood placing families including pregnant mothers, young infants, and children living among the contamination for 30-plus years with no knowledge of the contamination of the property or health threats associated with this contamination.

36.     Had Defendants properly remediated or contained the contaminants, Plaintiffs' and the Class Members' properties would not have been contaminated and their health would not have been threatened.

37.     Defendants Gehl and Greenfield knew of the disposal of the liquid hazardous wastes since at least the mid 1960's when they physical engaged in the disposal of such wastes.  They each likewise knew of the migration of these substances outside the landfill and onto the neighboring properties since 1996 when each entered into a Settlement Agreement with the City of West Bend related to the disposal and migration of hazardous substances they disposed of on the Landfill.

38.     Had any of the Defendants notified the public, Plaintiffs' and Class Members would not have purchased property within the Villa Park neighborhood and would not have suffered damages as a result.

39.     Trichloroethylene, or TCE, is a known human carcinogen. TCE also degrades into other chlorinated solvents, many of which are also known carcinogens (such as vinyl chloride) or anticipated to be carcinogens.

40. In addition, on information and belief, the Landfill is expected to be also leaking 1,4-dioxane, which has been used as a preservative in chlorinated solvents including TCE and PCE. 1,4-dioxane is anticipated to be a human carcinogen.

41. 1,4-dioxane also is more water soluble than TCE and therefore tends to migrate further and farther than the chlorinated solvents themselves.

42. Despite this fact, upon information and belief, Defendant has never revealed any testing for 1,4-dioxane in the surrounding environment or in the Villa Park.

**Plaintiffs and Residents Left Completely in the Dark**

43. Until recent testing began, no one, including any Defendants, or City's agents and employees, notified Plaintiffs or Class Members, the EPA Administrator or other required authorities of the presence of Landfill contaminants in, under, and around Plaintiffs' and the Class Members' properties.

44. No one, including any Defendant, nor its agents, notified Plaintiffs or Class Members of the significantly elevated cancer risks posed by the presence Landfill contaminants in, under, and around their properties.

45. Rather, for decades prior to the recent letters, Defendants continued to conceal the presence of Landfill contaminants in Villa Park from the public, Plaintiffs, and Class Members.

46. Plaintiffs and the Class Members reasonably believed that the groundwater, surface water, air, soil, and natural resources in the Villa Park neighborhood did not pose any greater health hazard than any other groundwater, air, soil, and natural resources.

47. Plaintiffs' and the Class Members' properties have each been exposed to hazardous materials due to Defendants' negligence in operating, owning, containing, and remediating the Landfill.

9

48.     Plaintiffs and the Class Members seek redress and damages for economic losses, such as loss of property value and the interference with the use and enjoyment of their property; the prompt identification, delineation, cleanup, excavation, treatment, and identification and removal of Landfill contaminants from their properties; and punitive damages and other damages as the result of the carelessness, recklessness, negligence and willful and wanton violation of law by the Defendants.

49.     Defendant, the City of West Bend, has actual notice of *all* Class Members living in the Villa Park neighborhood and the impact that they have had on the property owned by those Class Members.  They have identified both by name and address each and every resident of the Class Area which they are aware of the landfill and its impacts therein. *Infra, e.g.,* Class Area Map.

50.     Separate and apart from acting negligently, at all relevant times Defendants caused actual injury and actual damages to Plaintiffs, the Class Members, and/or their property, including property damages, economic damages, and losses of use and enjoyment, through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

51.     Defendants, despite knowledge of the serious health and environmental effects associated with Landfill contaminants leaking throughout the Class Area and the surrounding environment failed to warn the public in general and the Class Members in particular of the dangers that the historical use of the property posed.

52.     Defendants, despite knowledge of the serious health and environmental effects associated with Landfill contaminant exposure, and despite continued warnings from health and environmental regulators, masked the true extent of contamination and its associated risks, thereby enabling Defendants to avoid taking all appropriate steps to properly remediate these properties.

10

53.    Defendants, despite knowledge of the serious health and environmental effects associated with Landfill contaminants, and despite orders and warnings from health and environmental regulators, failed to properly remediate these chemicals in the Class Area.

## EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

54.    Plaintiffs and Class Members incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

55.    The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Class Members the pollution present on their properties.

56.    As a result of Defendants' actions, Plaintiffs and Class Members could not reasonably know or have learned through reasonable diligence that Plaintiffs' and the Class Member's properties were contaminated with significantly elevated levels of Landfill contaminants and that those risks were the direct and proximate result of Defendants' acts and omissions.

57.    Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the true character, quality and nature of the contamination in, under, and on properties forming the Class Area.  Defendants were aware of the non-public nature of the true character, quality, and nature of the contamination of the Class Area because this was non-public information over which Defendants had and continue to have control of, and because Defendants knew that this information was not available to residential homeowners and purchasers of those properties within the Class Area, including the Plaintiffs and the Class Members and continued to intentionally concealed such facts.

58.    Plaintiffs and the Class Members had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by

Defendants, neither Plaintiffs nor the Class Members could have reasonably discovered the wrongdoing at any time prior.

<u>**CLASS ALLEGATIONS**</u>

59.     This Class Action is being filed by the Plaintiffs, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and others similarly situated.

60.     Plaintiffs seek to certify the following classes, defined as:

> **Villa Park Property Owner Class ("Owner Class")**: Any and all persons that own any real property in the Villa Park Subdivision (collectively, the "Class Area") in West Bend, Wisconsin.

> **Villa Park Resident Class ("Resident Class")**: Any and all person that reside in the Villa Park Subdivision (the "Class Area") in West Bend, Wisconsin.

61.     A map of the Villa Park subdivision (the "Class Area") is shown in the figure below (outlined in black):



12

62. To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses from the above class definitions which are broader and/or narrower in time or scope of exposure.

63. Excluded from the classes are Defendants' officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

64. This Court may maintain these claims as a Class Action pursuant to Fed. R. Civ. P. 23(a), (b) and/or (c).

65. Numerosity: The members of each class are so numerous that joinder of all members is impractical.

66. The number of properties located within the Class Area exceeds 100 and, therefore, the number of members of each class likely also exceeds 100 people, in satisfaction of Rule 23(a)(1).

67. Commonality: There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class. The same conduct by Defendants have injured or will injure every member of the Class.

68. In conformance with Rule 23(a)(2), common questions of law and/or fact common to each respective class include, but are not limited to:

    a. Whether Defendants released, discharged, or permitted to be discharged, Landfill contaminants into the land or water on or under the respective Class Area;

    b. Whether Defendants are strictly liable for discharging, or permitting to be discharged, Landfill contaminants into the land or water on or under the Class Area.

    c. Whether Defendants are negligent in storing, containing, handling, treating, remediating or using and disposing of hazardous substances, including but not

13

limited to Landfill contaminants resulting in the contamination of the Class Area;

d.    Whether Defendants, through their respective acts or omissions, proximately caused property damage, diminution of property values, cleanup costs and health risks due to Landfill contaminants and related hazardous substances that were leaked, released, seeped, or otherwise discharged into the Class Area;

e.    Whether Defendants, through their acts or omissions, deprived Class Members of the free and reasonable use and enjoyment of their properties due to the contamination of neighboring properties in the Class Area;

f.    Whether Class Members, through Defendants' acts, omissions and/or discharges (or other condition of pollution), have suffered damages, including but not limited to economic damages;

g.    Whether Defendants provided the requisite statutory notice to the residents and the appropriate governmental agencies; and

h.    Whether Plaintiffs and the class members' civil rights have been violated.

69.    These questions of law and/or fact are common to the class and predominate over any questions affecting only individual Class Members.

70.    Typicality: The claims of the named Plaintiffs are typical of the claims of the Property Damage Class, in that all claims are based upon the same factual and legal theories. The principal issues in this matter involve Defendants' conduct in wrongfully handling, releasing, discharging (or other condition of pollution), enhancing, storing, transporting, processing, disposing of, and/or failing to remediate, its toxic and hazardous mining wastes and substances and by-products as well as its reckless and negligent decision to develop these reclaimed phosphate lands into residences where people live, work, and play, which impact all Class Members.

71.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class Members, as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs have retained counsel with substantial experience in the prosecution of environmental class actions and lawsuits involving chlorinated solvents and other hazardous substances throughout the country. Plaintiffs and their

14

counsel are committed to vigorously prosecuting this action on behalf of the class, and they have the financial resources to do so. Neither Plaintiffs nor counsel has any interest adverse to those of the Class.

72. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

73. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the classes, thereby making relief in the form of an injunction requiring the prompt identification, remediation and removal of all Landfill contaminants and related contaminants from the class properties and because Defendants acted or refused to act on grounds generally applicable to all members of classes, thereby making relief in the form of an injunction requiring the prompt identification, remediation and removal of all Landfill contaminants and related contaminants from the properties of Plaintiffs and the Class Members appropriate.

74. Plaintiffs and the Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendants' wrongful conduct, including but not limited to its continued discharge (or other condition of pollution) of hazardous substances into, under, and onto the land and water of the Class Area.

75. Common questions of law and fact predominate over individualized issues and a class action is superior to other available methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3). Absent a class action, most members of the classes likely would find

15

the cost of litigating their claims to be prohibitive and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

76.     Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses.

77.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the class who has suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all members of such class.

78.     No unusual difficulties are likely to be encountered in the management of this action as a class action.

79.     Class certification is also appropriate because Defendants acted on grounds generally applicable to the members of the classes, making relief appropriate with respect to the classes. Specifically, Plaintiffs and the Class Members seek compensation for loss of use and enjoyment of their property, diminution in property value, the identification and removal of contamination from their property, and other relief deemed just and proper.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

80.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

16

81. Plaintiffs and the classes bring this claim against Defendant City, Defendant Greenfield and Defendant Gehl.

82. At all relevant times hereto, Defendants each owed to Plaintiffs and Class Members who foreseeably could be injured by its negligence, a duty to exercise reasonable care in storing, disposing, releasing, remediating, discharging, Landfill contaminants, including carcinogenic materials, that it knew, or should have known, could result in damage and injury to Plaintiffs, Class Members and their property.

83. Defendants also owed a duty of care to Plaintiffs and Class Members to exercise reasonable care in the disposal, storage, and remediation of Landfill contaminants particularly in proximity to Plaintiffs' and Class Members' residential property.

84. Defendants further owed a duty to exercise reasonable care to disclose the presence of these hazardous substances, including carcinogenic materials, the risks that they posed, and what Defendant knew about the presence and risks of these contaminants.

85. These duties to exercise reasonable care arose out of the common law of Wisconsin, as well as relevant Federal and state environmental regulations.

86. Defendants breached their duty, over a period of years, in at least the following respects:

    a. Failing to take appropriate actions despite knowledge of the widespread presence of contamination in the form of hazardous substances, including carcinogenic materials, on and around the Landfill including into, onto, and under the land that forms the Class Area and into private homes within the Class Area along with the knowledge of the health and environmental risks that these materials posed for those living in the Class Area.

17

b.     Failing to safely, properly and timely remove, remediate and dispose of the hazardous substances, including carcinogenic materials.

c.     Failing to disclose to Plaintiffs and Class Members the contamination on, in, and around their properties, and the risks that this contamination posed to them and to their families, and the likelihood that they were being exposed to carcinogenic chemicals.

d.     Failing to warn Plaintiffs and Class Members of the contamination on, in, and around their properties, and the risks that it posed to them and to their families, and the likelihood that they were being exposed to carcinogenic chemicals.

e.     Defendant has failed to adequately and with due care identify the extent of contamination from the leaking landfill, promptly notify property owners of impacts and health threats posed by those chemicals, and remediate these chemicals so as to reduce or remove the threat to Plaintiffs' and Class Members' properties, families, and health.

f.     Disposing of hazardous substances on the Landfill without exercising reasonable care under the circumstances to prevent migration of those substances off-site;

g.     Being otherwise negligent.

87.     As a result of Defendants' acts and omissions, as further detailed above, extensive contamination has existed, exists and will continue to exist and has been documented in the Class Area.

88.     As a result of Defendants' misconduct as set forth herein, Plaintiffs and Class Members have suffered and continue to suffer damages, including, but not limited to, the loss of value

18

to their property and the loss of the use and enjoyment of their property and an increased risk of serious latent injury/illness.

89. At all relevant times, Defendants caused actual injury and actual damages to Plaintiffs and the Class Members and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

90. Defendants, despite knowledge of the serious health and environmental effects associated with exposure to such hazardous substances, including carcinogenic materials, allowed for the development of contaminated lands for development and sale for residential use despite being unfit for residential purposes due to the presence of elevated levels of contamination in the form of Landfill contaminants in, on, and around the land comprising the Class Area and subsequently failed to warn Plaintiffs, the Class Members, and the public of the dangers such activities posed.

91. Defendants, despite knowledge of the serious health and environmental effects associated with exposure to Landfill contaminants, masked the true extent of contamination, thereby enabling the themselves to avoid taking all appropriate steps to properly remediate the hazardous substances and levels of contamination in, on, and around the Class Area or to remediate and mitigate dangers.

92. As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiffs and Class Members properties have been and will continue to be contaminated, the value diminished, and the properties unfit for unfettered residential use.

93. As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiffs and the Class Members currently suffer an increased risk of serious latent disease, including a number of types of cancer that are associated with exposure to Landfill contaminants.

19

94.     As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiffs and Class Members currently suffer actual property damage, diminution in the value of their property, cleanup costs, loss of use and enjoyment of their property and destruction of their community.

95.     Plaintiffs and Class Members seek to recover against the Defendants for property damage, including diminution of property values, the cost of remediation of properties, as well as the cost of periodic medical examinations necessary to detect the onset of physical harm that may be caused by Landfill contaminants on and around Plaintiffs' property.

## COUNT II – PRIVATE NUISANCE

96.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

97.     Plaintiffs and the classes bring this claim against Defendant City, Defendant Gehl and Defendant Greenfield.

98.     Defendants' past, present and/or continuing acts and/or omissions constitute a nuisance in that Defendants have used the Landfill property in a manner that has resulted in an unreasonable burden and interference on the Plaintiffs and the Class Members in the form of personal harm, inconvenience, annoyance and discomfort incidental to the contamination of their properties by Landfill contaminants leaked, leached, or discharged from the Landfill.

99.     Defendants' past, present and/or continuing activities, acts and/or omissions at the Landfill and in the property surrounding the Landfill including, but not limited to, the Villa Park neighborhood constitute a private nuisance resulting in unreasonable interference with Plaintiffs' and the Class Members' right to the exclusive use and enjoyment of their properties due to the presence of contamination in the form of hazardous and toxic substances contaminating the properties surrounding their properties and the surrounding environment, thereby exposing Plaintiffs and the

20

Class Members to hazardous and toxic substances and substantially interfering with Plaintiffs' and the Class Members free use and enjoyment of their properties.

100. Defendants' past, present and/or continuing acts and/or omissions, resulting in high levels of hazardous contamination in and on the properties surrounding the Landfill and/or Defendant's failure to remove or properly investigate and remediate this hazardous contamination, and allowing such contamination to remain on Plaintiffs' properties, the surrounding properties, and the surrounding environment, constitutes a nuisance in that Defendants have managed the Landfill and the remediation of Landfill contaminants in a manner that has unreasonably interfered with Plaintiffs' and the Class Members' property interests, health and safety.

101. Defendants' past, present and/or continuing acts and/or omissions, resulting in high levels of Landfill contamination the properties surrounding the Landfill and/or Defendants' failure to remove or properly investigate and remediate this hazardous contamination, and allowing such contamination to remain on the private properties surrounding Plaintiffs' properties constitutes a nuisance in that Defendants will now have to engage in extensive and disruptive remediation and removal of these contaminants that will result in unreasonable interference with Plaintiffs' and the Class Members' use and enjoyment of their property interests.

102. Defendants' contamination presently impacts Plaintiffs, causes a diminution in their property values, is a blight on Plaintiffs' community, causes annoyance, interference and inconvenience and deprives Plaintiffs of the free use and enjoyment of property, including, but not limited to, the inability to fully use, enjoy and recreate on his outdoor spaces, freely perform certain work and repairs on the property; and requiring the property to be dug up, excavated, handled with extreme caution and otherwise disrupted causing inconvenience and disruption. Plaintiffs additionally suffer fear of adverse health effects, including cancer and other latent, serious illness.

103.     In the alternative, Defendants' disposal of and/or failure to control and/or remediate Landfill contaminants from residential areas violates applicable standards and/or regulations, which constitutes a nuisance per se.

104.     Defendants knew that the invasion of contaminants onto Plaintiffs' and the Class Members' properties was substantially certain to result from its actions and/or omissions, as aforesaid.

105.     This interference with Plaintiffs' and the Class Members' use and enjoyment of their property is and will continue to be substantial, unreasonable, unwarranted and unlawful.

106.     As a result of Defendants' wrongful acts and omissions, Plaintiffs and the Class Members have suffered and will suffer exposure to hazardous substances, annoyance, inconvenience, discomfort, displacement, fear of adverse health effects and economic loss for which damages are justified.

107.     As a direct and proximate result of Defendants' misconduct, Plaintiffs and the members of the Classes have suffered and will continue to suffer economic losses and the loss of value to their property and other damages.

108.     The nuisance that Defendants created is a continuing nuisance in that it has continued and remains unabated.

109.     Separate and apart from acting negligently, at all relevant times Defendants caused injury and damages to the Plaintiffs, the Classes and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

110.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to volatile organic compounds, specifically but not exclusively through vapor intrusion, failed to properly investigate and remediate said contaminants from the surrounding environment, and had knowledge that the land had been, is, or would be developed into real estate

22

for residential use at the same time as failing to warn purchasers and residents of the dangers of such contaminants.

111.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to such contaminants, masked the true extent of contamination, thereby enabling the Defendant to avoid taking all appropriate steps to properly remediate Landfill contaminants and to mitigate their dangers in the Class Areas.

112.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to such contaminants, failed to properly remediate such contamination in the Class Area.

### COUNT III – STRICT LIABILITY – ABNORMALLY DANGEROUS ACTIVITY

113.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs of this complaint as if set forth in full herein.

114.     Plaintiffs and the classes bring this claim against Defendant City, Defendant Gehl and Defendant Greenfield.

115.     Defendants, by improperly disposing of, controlling, and then failing to properly identify, contain, remediate  and ultimately disclose the presence of Landfill contaminants  from the former Landfill have engaged in an activity that is abnormally dangerous, ultrahazardous, and inherently or intrinsically dangerous activities for which they are strictly liable to the Plaintiffs and the Class Members.

116.     Defendants' activities pose a high degree of risk of harm to Plaintiffs. The likelihood that the harm that results from the Defendant's activities will be great is based on the fact that the hazardous chemical contamination presents serious property and health risks, including cancer.

117.     Defendants' use, management and remediation of the Landfill with actual knowledge that nearby properties that were for residential use is abnormally dangerous and that danger cannot

23

be eliminated through the use of reasonable care as such development is inherently unreasonably dangerous. There is no safe way to house people on these lands that have not been properly treated or remediated and therefore the radiation levels pose unreasonably unsafe hazards.

118. Defendants' disposal, storage, and inadequate remediation of these wastes areas and failure to properly investigate, delineate, identify, remediate and warn Plaintiffs and the Class Members about the contamination in the in the Class Areas was neither a matter of common usage nor appropriate to the place where it was carried out.

119. Residential exposure to significantly elevated levels of Landfill contaminants, including carcinogenic wastes, leading to the increased risk of health impacts, including cancer, is a critical societal problem in Wisconsin, and thus, the value of Defendants' activities, including their flawed and inadequate remediation, is substantially outweighed by the serious health and environmental and health problems caused by them.

120. As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs and the Class Members have suffered and continue to suffer actual damages and injuries including economic losses, property damages and the loss of value to their property; and other damages as set forth herein.

121. Separate and apart from acting negligently, at all relevant times Defendants caused injury and damages to the Plaintiffs and the classes and/or their property through acts and omissions actuated by actual malice and/or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

122. Defendants, despite knowledge of the serious health and environmental effects associated with exposure to these Landfill contaminants, failed to properly investigate, identify and remediate said contaminants from the land while failing to warn residents and purchasers of the dangers of such contamination.

24

123.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to such contaminants, masked the true extent of contamination, thereby enabling it to avoid taking all appropriate steps to properly remediate the contamination or to mitigate dangers in the Class Areas.

124.     Defendants, despite knowledge of the serious health and environmental effects associated with exposure to Landfill contaminants failed to properly remediate such contamination prior to development for residential use and/or consistent with current residential uses.

## COUNT IV – TRESPASS

125.     Each of the preceding paragraphs is incorporated herein.

126.     Plaintiffs and the classes bring this claim against Defendant City, Defendant Gehl and Defendant Greenfield.

127.     Defendants intentionally disposed of and stored chemicals that directly caused the migration of toxic chemicals under, onto, and into Plaintiffs' and Class Members' properties and homes.

128.     These chemicals consist of an unwanted and unlawful invasion of Plaintiffs' and Class Members' properties.

129.     Defendants' trespass has proximately caused Plaintiffs and Class Members to suffer economic and non-economic damages including remediation costs and loss of property value.

130.     Plaintiffs' and Class Members right to be free of trespass under the common law of the State of Wisconsin has been and continues to be denied by Defendant.

## COUNT V – VIOLATION OF 28 U.S.C. § 1983
## VIOLATION OF BODILY INTEGRITY

131.     Each of the preceding paragraphs is incorporated by reference herein.

132.     Plaintiffs and the classes bring this claim against each of Jay Shambeau and Doug Neumann, individuals acting under color of state law.

133.     The right to bodily integrity is a fundamental interest protected by the Due Process Clause of the Fourteenth Amendment.

134.     Jay Shambeau and Doug Neumann misled Plaintiffs and the class members into consuming a substance involuntarily by

    a.     failing to disclose the migration of VOC's from the Landfill to Plaintiffs' and the class members' properties;

    b.     failing to disclose the known risk of vapor intrusion, despite the presence of public water; and

    c.     continuously failing to remediate the Class Members' properties or mitigate the Plaintiffs' and class members' exposure to vapor intrusion from VOC's.

135.     This involuntary consumption of VOC's that have migrating from the Landfill into Plaintiffs' and the class members' properties introduced a life-threatening substance into their body without their knowledge and/or consent.

136.     This involuntary consumption of VOC's caused by Shambeau and Neumann shocks the conscience as they have known for years about the migration of life-threatening substances onto Plaintiffs' properties and failed to timely warn, remediate or mitigate the exposure of Plaintiffs' and the class members' bodies to this intrusion.

137.     Shambeau and Neumann have and had sufficient time for taking action, knew of the facts from which they could infer substantial risk of serious harm, including the development of cancer, they did actually infer this risk existed, but nonetheless they acted with indifference and a callous disregard towards the rights of Plaintiffs' and the class members.

26

138.     As a proximate and direct result of Shambeau's and Neumann's actions and omissions, Plaintiffs and the class members suffered damages. Plaintiffs seek all damages on behalf of themselves and the class they seek to represent including economic, non-economic and punitive damages.

## COUNT VI – VIOLATION OF 28 U.S.C. § 1983
## FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL SEIZURE

139.     Each of the preceding paragraphs is incorporated herein.

140.     Plaintiffs and the Classes bring this claim against each of Jay Shambeau and Doug Neumann, individuals acting under color of state law.

141.     The Fourth and Fourteenth Amendments prevent the unlawful seizure of Plaintiffs' properties and also prevent the unlawful damage of property during a search or seizure.

142.     Shambeau and Neumann each caused an unlawful seizure by allowing Plaintiffs' and the class members' properties to be unreasonably destroyed. Shambeau and Neumann each had realistic opportunities to step forward and prevent the violation of Plaintiffs' and the class members' property destruction.

143.     Shambeau and Neumann each acted with a reckless disregard for Plaintiffs' and the class membes' properties by:

  a.      failing to disclose the migration of VOC's from the Landfill to Plaintiffs' and the class members' properties;

  b.      failing to disclose the known risk of vapor intrusion, despite the presence of public water; and

  c.      continuously failing to remediate the Class Members' properties or mitigate the Plaintiffs' and class members' properties' exposure to vapor intrusion from VOC's.

144.     As a proximate and direct result of Shambeau's and Neumann's actions and omissions, Plaintiffs and the class members suffered damages.  Plaintiffs seek all damages on behalf of themselves and the class they seek to represent including economic, non-economic and punitive damages.

**COUNT VI – VIOLATION OF 28 U.S.C. § 1983**
**STATE CREATED DANGER**

145.     Each of the preceding paragraphs is incorporated by reference herein.

146.     Plaintiffs and the Classes bring this claim against each of the City of West Bend, Jay Shambeau and Doug Neumann, and others since 1986 including past Mayors, City Administrators and Directors of Public Works, individuals acting under color of state law.

147.     Defendants each owe a duty to Plaintiffs and the class members to protect the citizens of West Bend.

148.     Defendants created a danger to Plaintiffs and the class members, who are citizens of West Bend by

a.      failing to disclose the migration of VOC's from the Landfill to Plaintiffs' and the class members' properties;

b.      failing to disclose the known risk of vapor intrusion, despite the presence of public water; and

c.      continuously failing to remediate the Class Members' properties or mitigate the Plaintiffs' and class members' properties' exposure to vapor intrusion from VOC's.

149.     To the extend Defendants did not cause the danger, Defendants increased the danger because Defendants took ownership of the Landfill from a private entity with knowledge of the Landfill's dangers to the citizens of West Bend by

a.      failing to disclose the migration of VOC's from the Landfill to Plaintiffs' and the class members' properties;

28

b. failing to disclose the known risk of vapor intrusion, despite the presence of public water; and

c. continuously failing to remediate the Class Members' properties or mitigate the Plaintiffs' and class members' properties' exposure to vapor intrusion from VOC's.

150. These failures were each a proximate cause of injury to Plaintiffs and the class members.

151. These failures shock the conscience.

152. Plaintiffs seek all damages on behalf of themselves and the class they seek to represent including economic, non-economic and punitive damages.

## COUNT VII – VIOLATION OF 28 U.S.C. § 1983
## MONELL CLAIM AS TO CITY OF WEST BEND

153. Each of the preceding paragraphs is incorporated by reference herein.

154. Plaintiffs and the Classes bring this claim against Defendant City of West Bend.

155. Co-Defendants Shambeau and Neumann and and others since 1986 including past Mayors, City Administrators and Directors of Public Works, individuals acting under color of state law are/were final policy makers for the City of West Bend as to the disclosure, remediation, mitigation (or lack of each) of the Landfill. Each signed documents such as consent decree or has worked with the Wisconsin Department of Natural Resources regarding the contamination of Plaintiffs' properties.

156. Each of Shambeau and Neumann and others at the City of West Bend had final policymaking and authority to

a. disclose the migration of VOC's to Plaintiffs' and the class members' properties;

b. disclose the risk of vapor intrusion of these substances to Plaintiffs and the class members; and

29

c. cause remediation and or mitigation of exposure of Plaintiffs and the class members to vapor intrusion from VOCs.

157. Each of them failed to do any of this, which shocks the conscience.

158. These failures were each a proximate cause of injury to Plaintiffs and the class members.

159. Plaintiffs seek all damages on behalf of themselves and the class they seek to represent including economic, non-economic and punitive damages.

## <u>JURY TRIAL DEMAND AND PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs request that the Court enter an order or judgment against Defendants as follows:

A. Enter an Order pursuant to Rule 23 permitting this action to be maintained as a class action, Plaintiffs as the representative of the Property Class and appointing Plaintiffs' counsel as counsel for such classes;

B. Enter judgment against Defendants for compensatory damages; the prompt testing, assessment, identification, remediation, excavation and removal of all Landfill contaminants and related chemicals from Plaintiffs and Class Members' properties; the cost of periodic medical examinations necessary to detect the onset of physical harm, including, serious latent injury and/or disease that may be caused by carcinogenic contaminants on, in, under and around Plaintiffs' property; attorneys' fees, costs of suit as provided for by law; and such other relief as the Court may deem just and proper in favor of Plaintiffs and the Class Members against Defendants for loss of property value, and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, expert fees and costs of this suit;

30

C.     Enter an injunction requiring Defendants to promptly and completely remediate Landfill contaminants from the Plaintiffs' and Class Members' properties and the surrounding environment;

D.     Enter an injunction requiring the City of West Bend to comply with all applicable reporting requirements of WI St. § 323.60 and the Emergency Planning and Community Right-to-Know Act at 42 USC § 11001, et seq. and 28 USC § 1983.

E.     Award prejudgment and post-judgment interest as provided by law;

F.     Award punitive damages for wanton, reckless and callous disregard of Plaintiffs' and the class members' constitutional rights; and

G.     Such other relief as this Court deems necessary, just and proper.

Plaintiffs demand a trial by jury as to all claims so triable in this action.

Dated:  October 14, 2021


                              Respectfully submitted,


                              /s/ Jonathan B. Nace
                              **Nidel & Nace, P.L.L.C.**
                              One Church Street
                              Suite 802
                              Rockville, MD 20850
                              Tel: 202-780-5153
                              jon@nidellaw.com